**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Case No.: _____

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY CO.,

     Plaintiffs,                                   **Jury Trial Demand**

vs.

NEXT MEDICAL FLORIDA, L.L.C., PATRICK ST.
GERMAIN, D.C., ASSOCIATESMD BILLING AND
MANAGEMENT LLC, and RUNDEEP GADH, D.O.,

     Defendants.

_____/

## COMPLAINT

     Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

     1.     This action seeks to recover more than $17,200,000.00 that Defendants wrongfully obtained from GEICO by submitting thousands of fraudulent and unlawful no-fault ("no-fault", "personal injury protection", or "PIP") insurance charges through Defendants Next Medical Florida, L.L.C. ("Next Medical"), and AssociatesMD Billing and Management LLC ("AssociatesMD") relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services, including purported examinations, physical therapy services, chiropractic services, and muscle strength testing (collectively, the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims ("Insureds") who were eligible for coverage under GEICO no-fault insurance policies.

2.     In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending, fraudulent and unlawful PIP insurance claims that Defendants have submitted through Next Medical and AssociatesMD, because:

(i)     at all relevant times: (a) Next Medical and AssociatesMD operated in violation of the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"); (b) Next Medical and AssociatesMD operated in violation of Florida's patient brokering act, Fla. Stat § 817.505 (the "Patient Brokering Act"); (c) Next Medical and AssociatesMD operated in violation of Florida's anti-kickback statute, Fla. Stat. § 456.054 (the "Anti-Kickback Statute"); and (d) Next Medical and AssociatesMD operated in violation of Fla. Stat. § 817. 234(7) (the "False and Fraudulent Insurance Claims Statute");

(ii)    the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

(iii)   in many cases, the Fraudulent Services never were provided in the first instance; and

(iv)    the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently inflate the charges submitted to GEICO.

3.     Each and every charge submitted through Next Medical and AssociatesMD since at least 2019 has been fraudulent and unlawful for the reasons set forth herein. The charts annexed hereto as Exhibits "1" - "2" set forth large and representative samples of the fraudulent and unlawful claims that have been identified to date that have been submitted to GEICO by mail through Next Medical and AssociatesMD.

4.     The Defendants' interrelated fraudulent schemes began no later than 2019, and have continued uninterrupted since that time.

## THE PARTIES

### I.    Plaintiffs

5.     Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "GEICO") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

### II.    Defendants

6.     Defendant Patrick. St. Germain, D.C. ("St. Germain") resides in and is a citizen of Florida.

7.     St. Germain was licensed to practice chiropractic in Florida on April 7, 1989, but never has been licensed as a physician.

8.     St. Germain was the member and owner of Next Medical, purported to perform or directly supervise many of the Fraudulent Services at Next Medical, and used Next Medical as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

9.     Defendant Next Medical is a Florida limited liability company with its principal place of business in Apopka, Florida.

10.    Next Medical was organized in Florida on or about March 19, 2013, had St. Germain as its member and owner, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

11.    At all relevant times, Next Medical falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

12. Next Medical and St. Germain have operated numerous health care clinics in Florida in pervasive violation of the Clinic Act, Patient Brokering Act, Anti-Kickback Statute, and False and Fraudulent Insurance Claims Statute, including clinics at the following locations:

(i) 12789 Waterford Lakes, Orlando, Florida 32828;

(ii) 7335 W. Sand Lake Road, Orlando, Florida, 32819;

(iii) 877 S Orange Blossom Trail, Apopka, Florida, 32703;

(iv) 1770 S Woodland, Blvd, Deland, Florida, 32720;

(v) 3990 E. State Road 44, Wildwood, Florida, 34785;

(vi) 6285 Minton Road, Palm Bay, Florida, 32907;

(vii) 426 SW Commerce Drive, Lake City, Florida, 32025;

(viii) 3429 W University Avenue, Gainesville, Florida, 32607; and

(ix) 5937 Cypress Gardens Blvd, Winter Haven, Florida, 33884.

13. Defendant Rundeep Gadh, D.O. ("Gadh") resides in and is a citizen of Florida.

14. Gadh was licensed to practice osteopathic medicine in Florida on April 10, 2008.

15. Gadh was the member and owner at AssociatesMD, and used AssociatesMD as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

16. Defendant AssociatesMD is a Florida limited liability company with its principal place of business in Plantation, Florida.

17. AssociatesMD was organized in Florida on or about June 1, 2017, was owned by Gadh and had Gadh as its member, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

18. At all relevant times, AssociatesMD falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

### III.   __Other Relevant Individuals__

19.     Although they have also not been named as Defendants in this Complaint, Xavier Aguilera, D.C. ("Aguilera"), Kyle Learn, D.C. ("Learn"), Yoanis Mendoza, D.C. ("Mendoza"), Angel Garcia, D.C. ("Garcia"), John Hadid, D.C. ("Hadid"), Jessica Anderson, D.C. ("Anderson") Darius Williams, D.C. ("D. Williams"), Alexandrea Williams, D.C. ("A. Williams"), Yunia Gonzalez, D.C. ("Gonzalez"), Ximena Vaca, D.C. ("Vaca"), Sara James, APRN (James"), Meagan Pomerleau, APRN ("Pomerleau"), Kenisha Turner, APRN ("Turner"), Saira Campos, APRN ("Campos"), Jeffrey Spindler, APRN ("Spindler"), Ryan Marina, APRN ("Marina"), Ricardo Campbell, APRN ("Campbell"), Jorge Dominguez, APRN ("Dominguez"), Yamilka Pichardo, APRN ("Pichardo"), Ahmed Howeedy, M.D. ("Howeedy"), and Steven Cimerberg, D.O. ("Cimerberg") are relevant to understanding Plaintiffs' claims regarding Next Medical and AssociatesMD.

20.     Aguilera, Learn, Mendoza, Garcia, Hadid, Anderson, D. Williams, A. Williams, Gonzalez, and Vaca (collectively, the "Treating Chiropractors") are chiropractors who were employed or associated with Next Medical, and who – at St. Germain's direction – purported to perform many of the Fraudulent Services at Next Medical, and referred Next Medical's patients to AssociatesMD as part of the unlawful referral scheme between and among Next Medical and AssociatesMD.

21.     James, Pomerleau, Turner, Campos, Spindler, Marina, Campbell, Dominguez, Pichardo, Howeedy, and Cimerberg (collectively, the "Treating Providers") are, respectively, nurse practitioners and physicians who were employed or associated with AssociatesMD, and who – at Gadh's direction – purported to perform many of the Fraudulent Services at AssociatesMD, and falsely diagnosed virtually every Insured referred to AssociatesMD with a purported

"Emergency Medical Condition" as part of an unlawful referral scheme between and among the Defendants.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

23.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

24.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

25.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

I.     **Overview of Pertinent Law Governing No-Fault Insurance Reimbursement**

26.     Florida requires automobile insurers such as GEICO to provide PIP insurance benefits ("PIP Benefits") to Insureds when they are injured in a motor vehicle accident. See Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

27.     Under the No-Fault Law, a health care services provider that possesses a valid assignment of PIP Benefits from an Insured and that provides medically necessary health care services to an Insured may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health

Care Financing Administration insurance claim form (known as the "HCFA-1500 form" or "CMS-1500" form).

28.     In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided, medically necessary, and the bill for the service cannot misrepresent the nature or extent of the service that was provided, the identity of the service provider, or the location where the service was provided. Furthermore, insurers such as GEICO are not required to pay anyone who knowingly submits a false or misleading statement relating to a PIP claim or charges. See Fla. Stat. § 627.736.

29.     Under Florida's False and Fraudulent Insurance Claims Statute, it is unlawful for a health care provider to engage in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from PIP Insureds. See Fla. Stat. § 817. 234(7).

30.     Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable, whether or not the underlying services were medically warranted or actually provided.

31.     By listing a health care practitioner in Box 31 of a HCFA-1500 form, the billing provider represents that the practitioner performed or directly supervised the underlying services, and "[t]o directly supervise, a doctor must be physically present at the facility". See Medicare Claims Processing Manual, Chapter 26, Item 31.

32.     Additionally, in order for a health care service to be eligible for PIP reimbursement, the applicable claim form must set forth the professional license number of the provider who personally performed or directly supervised the underlying health care service, in the line or space

provided for "Signature of Physician or Supplier, Including Degrees or Credentials." <u>See</u> Fla. Stat. § 627.736.

33.     PIP reimbursement for health care services is limited to $2,500.00 per injured person, unless a physician, physician assistant, or advanced practice registered nurse determines that the injured person suffered from an "emergency medical condition", in which case health care providers can be reimbursed up to $10,000.00 per Insured for health care services. <u>See</u> Fla. Stat. § 627.736.

34.     Pursuant to the No-Fault Law, an "emergency medical condition" means a "medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) serious jeopardy to patient health. (b) serious impairment to bodily functions. (c) serious dysfunction of any bodily organ or part." Fla. Stat. § 627.732.

35.     Furthermore, Florida's Patient Brokering Act, Fla. Stat. § 817.505, broadly prohibits any person from offering, paying, soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

36.     Likewise, Florida's Anti-Kickback Statute, Fla. Stat. § 456.054, prohibits any health care provider from offering, paying, soliciting, or receiving a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients. Violations of the Anti-Kickback Statute also constitute violations of the Patient Brokering Act.

37.     Insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Patient Brokering Act or

Anti-Kickback Statute, whether or not the underlying health care services were medically necessary or actually provided.

38.     Pursuant to the Clinic Act, and subject to certain limited exceptions, a clinic license issued by the Florida Agency for Health Care Administration is required in order to operate a health care practice in Florida. See Fla. Stat. § 400.991(1)(a).

39.     However, the Clinic Act provides an exemption from the clinic licensing requirements for:

> A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws. However, a health care practitioner may not supervise services beyond the scope of the practitioner's license … .

Fla. Stat. § 400.9905(4)(g)(emphasis added).

40.     In order for a health care practice to qualify for the "wholly owned" exemption under the Clinic Act, the licensed health care practitioner who owns the practice has a continuing obligation to supervise the business activities of the practice and remain legally responsible for the practice's compliance with all federal and state laws. Any failure to fulfill these requirements automatically voids a practice's exemption. See 59A-33.006(14), F.A.C.

41.     Pursuant to the Clinic Act, a health care practice operating in Florida without a valid exemption from the health care clinic licensing requirements must – among other things – obtain a clinic license and appoint a physician as medical director who must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful", and take immediate corrective action upon discovery of a fraudulent or unlawful charge. See Fla. Stat. § 400.9935(1).  In addition, a clinic medical director must "[e]nsure that all health care practitioners

at the clinic have active appropriate certification or licensure for the level of care being provided."
See Fla. Stat. § 400.9935(1).

42.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf
of a clinic that is required to be licensed . . . but that is not so licensed, or that is otherwise operating
in violation of this part . . . is an unlawful charge" and is ineligible for payment. See Fla. Stat. §
400.9935(3).

**II.      Defendants' Interrelated Fraudulent Schemes**

43.     Since at least 2019, and continuing through the present day, the Defendants
conceived and implemented interrelated fraudulent schemes in which they billed GEICO millions
of dollars, or caused GEICO to be billed millions of dollars, for unlawful, medically unnecessary,
illusory, and otherwise non-reimbursable services.

**A.      The Unlawful Operation of Next Medical Without Supervision by St. Germain**

44.     Although Next Medical purported to be exempt from the Clinic Act's health care
clinic licensure requirements, Next Medical operated without a valid exemption, did not otherwise
have a clinic license or a medical director and, as a result, operated as an unlicensed health care
clinic in violation of the Clinic Act.

45.     In particular, St. Germain failed to legitimately supervise Next Medical's business
activities – as required by the Clinic Act – and, as a result, Next Medical did not qualify for the
"wholly owned" exemption from the Clinic Act's health care clinic licensure requirements.

46.     St. Germain did not legitimately supervise the business activities of Next Medical,
inasmuch as St. Germain never conducted reviews of the billing or treatment records from Next
Medical to ensure that the billing was not fraudulent or unlawful, never took any legitimate steps
to ensure Next Medical's compliance with applicable law, and – to the contrary – directed the

submission of the fraudulent and unlawful charges through Next Medical to GEICO and other insurers.

47.     Indeed, given the fraudulent treatment and billing practices described below – which were pervasive across all of the billing submitted to GEICO through Next Medical – there is simply no way that St. Germain could have legitimately supervised the business activities of Next Medical to ensure that the billing was not fraudulent or ensure compliance with all applicable federal and state laws as required by the Clinic Act.

48.     Had St. Germain legitimately supervised the business activities of Next Medical, he would have noted, among other things, that:

(i)     Next Medical was – as set forth herein – operated in pervasive violation of, variously, the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute;

(ii)    Next Medical unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its patients in violation of Florida law;

(iii)   the Fraudulent Services purportedly provided by and billed through Next Medical were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol;

(iv)    in many cases, the Fraudulent Services purportedly provided by and billed through Next Medical were never provided in the first instance; and

(v)     the billing codes used for the Fraudulent Services purportedly provided by and billed through Next Medical misrepresented and exaggerated the level of services that were provided in order to fraudulently inflate the charges submitted to GEICO.

49.     Accordingly, Next Medical never qualified for the "wholly owned" exemption from licensure as a "health care clinic" set forth in Section 400.9905(4)(g). Nor did Next Medical qualify for any other exemption to the Clinic Act, or have a medical director and clinic license as required for a health care clinic without an exemption. As a result, Next Medical operated – at all relevant times – in violation of the Clinic Act.

**B.**     **The Unlawful Operation of AssociatesMD Without Supervision by Gadh**

50.     Furthermore, AssociatesMD purported to be exempt from the Clinic Act's health care clinic licensure requirements, but operated without a valid exemption, did not otherwise have a clinic license or medical director and, as a result, operated as an unlicensed health care clinic in violation of the Clinic Act.

51.     In particular, Gadh failed to legitimately supervise AssociatesMD's business activities – as required by the Clinic Act – and, as a result, AssociatesMD did not qualify for the "wholly owned" exemption from the Clinic Act's health care clinic licensure requirements.

52.     Gadh did not legitimately supervise the business activities of AssociatesMD, inasmuch as Gadh never conducted reviews of the billing or treatment records from AssociatesMD to ensure that the billing was not fraudulent or unlawful, never took any legitimate steps to ensure AssociatesMD's compliance with pertinent law, and – to the contrary – directed the submission of the fraudulent and unlawful charges through AssociatesMD to GEICO and other insurers.

53.     Indeed, given the fraudulent treatment and billing practices described below – which was pervasive across all of the billing submitted through AssociatesMD to GEICO– there is simply no way that Gadh could have legitimately supervised the business activities of AssociatesMD to ensure that the billing was not fraudulent or ensure compliance with all applicable federal and state laws as required by the Clinic Act.

54.     Had Gadh legitimately supervised the business activities of AssociatesMD, he would have noted, among other things, that:

(i)     AssociatesMD was – as set forth herein – operated in pervasive violation of, variously, the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute;

     (ii)     AssociatesMD unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its patients in violation of the False and Fraudulent Insurance Claims Statute;

     (iii)    the Fraudulent Services purportedly provided by and billed through AssociatesMD were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol;

     (iv)    in many cases, the Fraudulent Services purportedly provided by and billed through AssociatesMD were never provided in the first instance; and

     (v)     the billing codes used for the Fraudulent Services purportedly provided by and billed through AssociatesMD misrepresented and exaggerated the level of services that were provided in order to fraudulently inflate the charges submitted to GEICO.

55.     Accordingly, AssociatesMD never qualified for the "wholly owned" exemption from licensure as a "health care clinic" set forth in Section 400.9905(4)(g). Nor did AssociatesMD qualify for any other exemption to the Clinic Act, or have a medical director and clinic license as required for a health care clinic without an exemption. As a result, AssociatesMD operated – at all relevant times – in violation of the Clinic Act.

**C.**    **The Defendants' Unlawful General Business Practice of Failing to Make a Good-Faith Effort to Collect Co-Payments or Deductibles from Their Patients.**

56.     During the relevant time period, Next Medical, St. Germain, AssociatesMD, and Gadh unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

57.     In keeping with this fact, in virtually all of the thousands of bills (i.e., the HCFA-1500 forms) submitted through Next Medical and AssociatesMD to GEICO for the Defendants' Fraudulent Services, Next Medical and AssociatesMD represented that they did not collect any money, whether it be a co-payment or a deductible, from the patient.

58.     In the claims identified in Exhibits "1"–"2", Next Medical, St. Germain, AssociatesMD, and Gadh routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because Next Medical, St. Germain, AssociatesMD, and Gadh engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

**D.     The Violations of the Patient Brokering Act and the Anti-Kickback Statute**

59.     As set forth above, the Patient Brokering Act and Anti-Kickback Statute broadly prohibit any person from offering, paying soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

60.     Moreover, and as also set forth above, PIP reimbursement for health care services is limited to $2,500.00 per injured person, unless a physician, physician assistant, or advanced practice registered nurse determines that the injured person suffered from an "emergency medical condition", in which case, a provider can be reimbursed up to $10,000.00 for health care services.

61.     Next Medical and St. Germain did not have a physician, physician assistant, or advanced practice nurse on staff to render "emergency medical condition" diagnoses, and therefore needed to find another health care provider to render the "emergency medical condition" diagnoses that would enable them to submit the maximum amount of fraudulent and unlawful PIP billing, per Insured, to GEICO and other insurers.

62.     However, no legitimate health care provider would purport to diagnose the Insureds in Exhibits "1" and "2" with any "emergency medical conditions", because – to the extent that the

Insureds in the claims identified in Exhibits "1" - "2" had any presenting problems at all as the result of their typically-minor automobile accidents – the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

63. For instance, to the extent that there were police reports regarding the Insureds' accidents in the claims identified in Exhibits "1" and "2", the police reports typically indicated that no one was seriously injured in the accidents, or injured at all.

64. What is more, in many of the claims identified in Exhibits "1" - "2", the Insureds did not seek treatment at any hospital as the result of their accidents and, to extent that the Insureds in the claims identified in Exhibits "1" - "2" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis, and then discharged with nothing more serious than a minor soft tissue injury diagnosis.

65. Accordingly, Next Medical and St. Germain needed to find a fraudulent physician, physician assistant, or advanced practice registered nurse who would be willing to falsely diagnose their patients with "emergency medical conditions".

66. At the same time, AssociatesMD and Gadh wanted to submit as much PIP billing as possible for expensive and medically unnecessary examinations and the other fraudulent tests and services AssociatesMD and Gadh would purport to provide, without regard for the fact that the Insureds had not suffered any injuries that would warrant these examinations or tests.

67. However, in order to bill GEICO and other insurers for medically unnecessary and illusory examinations and testing, AssociatesMD and Gadh needed to obtain patient referrals from other health care providers, such as Next Medical and St. Germain.

68. Accordingly, Next Medical, St. Germain, AssociatesMD, and Gadh entered into a secret and unlawful patient brokering agreement, whereby in exchange for patient referrals from

15

Next Medical and St. Germain for expensive and medically unnecessary examinations, AssociatesMD and Gadh directed the Treating Providers working for them to falsely diagnose the Insureds with phony "emergency medical conditions" – which allowed Next Medical and St. Germain to bill GEICO and other insurers up to an additional $7,500.00 per insured – and then to refer each Insured back to Next Medical for the continued provision of additional medically unnecessary chiropractic and physical therapy services.

69.     In reality, these were "pay-to-play" arrangements that caused Next Medical, St. Germain, AssociatesMD, and Gadh to provide medically unnecessary patient referrals in violation of the Patient Brokering Act and Anti-Kickback Statute.

70.     For example:

(i)     On March 12, 2021, an Insured named AC was involved in an automobile accident. The contemporaneous police report indicated that AC's vehicle was drivable following the accident. The police report further indicate that while AC complained of some back pain, AC declined medical attention. In keeping with the fact that AC was not seriously injured in the accident, AC did not visit any hospital emergency room following the accident. To the extent that AC experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, AC sought treatment from Next Medical, where AC purportedly received chiropractic and physical therapy treatment in March 2021. On or around March 29, 2021, Next Medical and St. Germain caused AC to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Later that same day, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused AC to be falsely diagnosed with an emergency medical condition – which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(ii)    On November 24, 2021, an Insured named SB was involved in an automobile accident. The contemporaneous police report indicated that SB's vehicle was drivable following the accident. The police report further indicate that while SB complained of some head and neck pain, SB declined medical attention. In keeping with the fact that SB was not seriously injured in the accident, SB did not visit any hospital emergency room following the accident. To the extent that SB experienced any health problems at all as a result of the accident, they were of low or minimal

severity, and did not constitute any emergency medical condition. Even so, SB sought treatment from Next Medical, where SB purportedly received chiropractic and physical therapy treatment in December 2021. On or around December 13, 2021, Next Medical and St. Germain caused SB to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Later that same day, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused SB to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(iii)    On December 10, 2021, an Insured named ES was involved in an automobile accident. The contemporaneous police report indicated that ES's vehicle was drivable following the accident. The police report further indicate that ES was not injured and did not complain of any pain at the scene. In keeping with the fact that ES was not seriously injured in the accident, ES did not visit any hospital emergency room following the accident. To the extent that ES experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, ES sought treatment from Next Medical, where ES purportedly received chiropractic and physical therapy treatment in December 2021. On or around December 29, 2021, Next Medical and St. Germain caused ES to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on December 29, 2021, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused ES to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(iv)    On July 31, 2021, an Insured named ED was involved in an automobile accident. The contemporaneous police report indicated that ED's vehicle was drivable following the accident. In keeping with the fact that ED was not seriously injured in the accident, ED did not visit any hospital emergency room following the accident. To the extent that ED experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, ED sought treatment from Next Medical, where ED purportedly received chiropractic and physical therapy treatment in August 2023. On or around August 11, 2021, Next Medical and St. Germain caused ED to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on August 11, 2021, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused ED to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next

Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(v)     On July 31, 2021, an Insured named IB was involved in an automobile accident. The contemporaneous police report indicated that IB's vehicle was drivable following the accident. In keeping with the fact that IB was not seriously injured in the accident, IB did not visit any hospital emergency room following the accident. To the extent that IB experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, IB sought treatment from Next Medical, where IB purportedly received chiropractic and physical therapy treatment in August 2023. On or around August 11, 2021, Next Medical and St. Germain caused IB to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on August 11, 2021, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused IB to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(vi)    On June 27, 2022, an Insured named JH was involved in an automobile accident. The contemporaneous police report indicated that there was only minor damage to JH's vehicle, and that JH's vehicle was drivable following the accident. The police report further indicate that JH was not injured and did not complain of any pain at the scene. In keeping with the fact that JH was not seriously injured in the accident, JH did not visit any hospital emergency room following the accident. To the extent that JH experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, JH sought treatment from Next Medical, where JH purportedly received chiropractic and physical therapy treatment in June and July 2022. On or around July 6, 2022, Next Medical and St. Germain caused JH to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on July 6, 2022, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused JH to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(vii)   On June 27, 2022, an Insured named JH was involved in an automobile accident. The contemporaneous police report indicated that there was only minor damage to JH's vehicle, and that JH's vehicle was drivable following the accident. The police report further indicate that JH was not injured and did not complain of any pain at the scene. In keeping with the fact that JH was not seriously injured in the accident, JH did not visit any hospital emergency room following the accident. To the extent that JH experienced any health problems at all as a result of the accident, they were

of low or minimal severity, and did not constitute any emergency medical condition. Even so, JH sought treatment from Next Medical, where JH purportedly received chiropractic and physical therapy treatment in June and July 2022. On or around July 6, 2022, Next Medical and St. Germain caused JH to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on July 6, 2022, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused JH to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(viii)    On September 6, 2022, an Insured named JB was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to JB's vehicle, and that JB's vehicle was drivable following the accident. The police report further indicate that JB was not injured and did not complain of any pain at the scene. In keeping with the fact that JB was not seriously injured in the accident, JB did not visit any hospital emergency room following the accident. To the extent that JB experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, JB sought treatment from Next Medical, where JB purportedly received chiropractic and physical therapy treatment in October 2022. On or around October 11, 2022, Next Medical and St. Germain caused JB to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on October 11, 2022, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused JB to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(ix)    On August 29, 2022, an Insured named LJ was involved in an automobile accident. The contemporaneous police report indicated that LJ's vehicle was drivable following the accident. The police report further indicated that LJ was not injured and did not complain of any pain at the scene. In keeping with the fact that LJ was not seriously injured in the accident, LJ did not visit any hospital emergency room following the accident. To the extent that LJ experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, LJ sought treatment from Next Medical, where LJ purportedly received chiropractic and physical therapy treatment in September 2022. On or around September 14, 2022, Next Medical and St. Germain caused LJ to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on September 14, 2022, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused LJ to be falsely diagnosed with an emergency medical condition  which enabled Next Medical and St. Germain to submit thousands of dollars in additional

PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(x)    On October 11, 2022, an Insured named AD was involved in an automobile accident. The contemporaneous police report indicated that AD was not injured and did not complain of any pain at the scene. In keeping with the fact that AD was not seriously injured in the accident, AD did not visit any hospital emergency room following the accident. To the extent that AD experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, AD sought treatment from Next Medical, where AD purportedly received chiropractic and physical therapy treatment in October 2022. On or around October 19, 2022, Next Medical and St. Germain caused AD to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on October 19, 2022, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused AD to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(xi)    On December 21, 2022, an Insured named BP was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to BP's vehicle, and that BP's vehicle was drivable following the accident. The police report further indicated that BP was not injured and did not complain of any pain at the scene. Nonetheless, the next day BP presented to Palm Bay Hospital Emergency room where she was briefly observed on an outpatient basis and released shortly thereafter with no serious injury diagnosis. To the extent that BP experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, BP sought treatment from Next Medical, where BP purportedly received chiropractic and physical therapy treatment in January 2023. On or around January 23, 2023, Next Medical and St. Germain caused BP to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on January 23, 2023, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused BP to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(xii)    On February 7, 2023, an Insured named CM was involved in an automobile accident. The contemporaneous police report indicated that there was only minor damage to CM's vehicle, and that CM's vehicle was drivable following the accident. The police report further indicate that CM was not injured and did not

complain of any pain at the scene. In keeping with the fact that CM was not seriously injured in the accident, CM did not visit any hospital emergency room following the accident. To the extent that CM experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, CM sought treatment from Next Medical, where CM purportedly received chiropractic and physical therapy treatment in February 2023. On or around February 22, 2023, Next Medical and St. Germain caused CM to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on February 22, 2023, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused CM to be falsely diagnosed with an emergency medical condition  which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(xiii)    On May 2, 2023, an Insured named MG was involved in an automobile accident. The contemporaneous police report indicated that MG's vehicle was drivable following the accident. The police report further indicated that MG was not injured and did not complain of any pain at the scene. In keeping with the fact that MG was not seriously injured in the accident, MG did not visit any hospital emergency room following the accident. To the extent that MG experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, MG sought treatment from Next Medical, where MG purportedly received chiropractic and physical therapy treatment in May 2023. On or around May 12, 2023, Next Medical and St. Germain caused MG to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on May 12, 2023, AssociatesMD and Gadh – in exchange for the unlawful referral from Next Medical – caused MG to be falsely diagnosed with an emergency medical condition  which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

(xiv)    On July 25, 2023, an Insured named FM was involved in an automobile accident. The contemporaneous police report indicated that there was only minor damage to FM's vehicle, and that FM's vehicle was drivable following the accident. In keeping with the fact that FM was not seriously injured in the accident, FM did not visit any hospital emergency room following the accident. To the extent that FM experienced any health problems at all as a result of the accident, they were of low or minimal severity, and did not constitute any emergency medical condition. Even so, FM sought treatment from Next Medical, where FM purportedly received chiropractic and physical therapy treatment in August 2023. On or around August 23, 2023, Next Medical and St. Germain caused FM to be referred to AssociatesMD pursuant to the Defendants' unlawful patient brokering scheme. Thereafter, on August 23, 2023, AssociatesMD and Gadh –  in exchange for the unlawful referral

from Next Medical – caused FM to be falsely diagnosed with an emergency medical condition which enabled Next Medical and St. Germain to submit thousands of dollars in additional PIP billing through Next Medical to GEICO in connection with the medically unnecessary chiropractic and physical therapy that they purported to provide to the Insured.

71.     These are only representative examples. In the claims identified in Exhibits "1" - "2", the Defendants routinely and unlawfully made and received patient referrals in exchange for compensation, in violation of the Patient Brokering Act and Anti-Kickback Statute.

72.     In this context, there are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

73.     An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

74.     In the claims identified in Exhibits "1" - "2", almost all of the Insureds whom the Defendants purported to treat were involved in relatively minor accidents, and did not suffer any serious injuries in their accidents, to the extent that they suffered any injuries at all.

75.     It is highly improbable that any two or more Insureds involved in any one of the relatively minor automobile accidents in the claims identified in Exhibits "1" - "2" would  suffer from injuries so similar that they would all require referrals from St. Germain and Next Medical to AssociatesMD and Gadh on or about the same date for medically unnecessary examinations where they would then all receive purported "emergency medical condition" diagnoses from AssociatesMD and Gadh.

76.     It is even more improbable – to the point of impossibility – that this would occur repeatedly within the cohort of Insureds who purportedly received treatment from the Defendants.

77.     Even so – and in keeping with the fact that the Defendants' referrals were based upon unlawful compensation, rather than medical necessity – this repeatedly occurred within the cohort of Insureds who purportedly received treatment from the Defendants.

78.     For example:

(i)     On May 12, 2019, two Insureds – AH and KH – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about May 29, 2019, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(ii)    On May 2, 2021, two Insureds – FE and QE – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about May 12, 2021, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(iii)   On June 10, 2021, two Insureds – BW and GW – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about June 15, 2021, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(iv)     On July 31, 2021, two Insureds – ED and IB – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about August 11, 2021, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(v)      On August 8, 2021, two Insureds – AP and CR – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about August 23, 2021, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(vi)     On August 26, 2021, two Insureds – RA and TS – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about September 8, 2021, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(vii)    On October 13, 2021, two Insureds – JA and KA – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These

Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about October 20, 2021, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(viii)   On November 24, 2021, three Insureds – SB, TB, and FB – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about December 13, 2021, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(ix)   On March 18, 2022, two Insureds – BB and TC – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about April 4, 2022, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(x)   On May 13, 2022, two Insureds – JL and YL – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about June 15, 2022, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(xi)     On June 15, 2022, two Insureds – KA and MF – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about July 6, 2022, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(xii)    On June 27, 2022, two Insureds – JH and JH – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about July 6, 2022, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(xiii)   On November 27, 2022, two Insureds – YA and JJ – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about December 6, 2022, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(xiv)    On December 2, 2022, two Insureds – IJ and JJ – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to

AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about December 18, 2022, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

(xv)     On December 25, 2023, two Insureds – DC and BC – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Next Medical and St. Germain to AssociatesMD and Gadh on or about the same date after their accident. Even so, on or about January 17, 2024, Next Medical and St. Germain referred both of these Insureds to AssociatesMD and Gadh for medically unnecessary examinations in order to obtain predetermined, and false, emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme.

79.     These are only representative examples. Pursuant to the Defendants' unlawful patient brokering scheme, Next Medical and St. Germain routinely referred multiple Insureds who had been involved in the same accident to AssociatesMD and Gadh for medically unnecessary examinations – in order to obtain predetermined emergency medical condition diagnoses pursuant to the Defendants' unlawful patient brokering scheme – despite the fact that the Insureds were differently situated and in any case did not require the Defendants' Fraudulent Services.

80.     In the claims identified in Exhibits "1"–"2", Next Medical, St. Germain, AssociatesMD, and Gadh routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided – to the extent that they were provided at all – pursuant to an illegal patient brokering and kickback scheme.

**E.      The Defendants' Fraudulent Treatment and Billing Protocols**

81.      In the claims identified in Exhibits "1" – "2", almost none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced.

82.      Even so, in the claims identified in Exhibits "1" – "2", the Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" that was provided pursuant to pre-determined, fraudulent protocols designed to maximize the billing that they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

83.      The Defendants purported to provide their pre-determined fraudulent treatment protocols to the Insureds in the claims identified in Exhibits "1" - "2" without regard for the Insureds' individual symptoms or presentation, or – in most cases – the total absence of any actual continuing medical problems arising from any actual automobile accidents.

84.      Each step in the Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each Insured.

85.      No legitimate physician, chiropractor, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described below to proceed under his, her, or its auspices.

86.      The Defendants permitted the fraudulent treatment and billing protocols described below to proceed under their auspices because: (i) Next Medical and AssociatesMD were, at all relevant times, operating in violation of the Clinic Act, without legitimate oversight or medical

directors who legitimately fulfilled their statutory duties as medical directors; and (ii) the Defendants sought to profit from the fraudulent billing they submitted to GEICO and other insurers.

**1.      The Fraudulent Claims for Initial Examinations at Next Medical and AssociatesMD**

87.      As a first step in the Defendants' fraudulent treatment and billing protocol, virtually every one of the Insureds in the claims identified in Exhibits "1" - "2" purportedly received an initial examination at Next Medical and AssociatesMD.

88.      The examinations purportedly were performed by St. Germain and the Treating Chiropractors who were employed by or associated with Next Medical and St. Germain and who worked at their direction.

89.      As set forth in Exhibit "1", Next Medical and St. Germain then virtually always billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of $220.00 or $280.00 for each initial examination that they purported to provide.

90.      Similarly, as set forth in Exhibit "2", upon receiving a referral pursuant to the unlawful patient brokering and kickback scheme with Next Medical, AssociatesMD and Gadh then billed the initial examinations – performed by the various Treating Providers who were employed by or associated with AssociatesMD and Gadh and who worked at their direction – to GEICO, or caused them to be billed to GEICO, under: (i) CPT code 99203, typically resulting in a charge between $229.48 and $236.53 for each putative examination; or (ii) CPT code 99204, typically resulting in a charge of $660.00 for each putative examination.

91.      In the claims for initial examinations identified in Exhibits "1" - "2", the charges for the initial examinations were fraudulent in that they misrepresented Next Medical and AssociatesMD's eligibility to collect PIP Benefits in the first instance.

92.     In fact, and as set forth herein, Next Medical and AssociatesMD never were eligible to collect PIP Benefits, inasmuch as they were operated in violation of the licensing and operating requirements set forth in the Clinic Act, the False and Fraudulent Insurance Claims Statute, as well as the Patient Brokering Act and Anti-Kickback Statute.

93.     As set forth below, the charges for the initial examinations identified in Exhibits "1" - "2" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

**a.     Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

94.     In the claims for initial examinations identified in Exhibits "1" – "2", Next Medical, St. Germain, AssociatesMD, and Gadh routinely misrepresented the severity of the Insureds' presenting problems.

95.     Pursuant to the American Medical Association's CPT Assistant, which governs the use of health care billing codes, during the relevant time period, the use of CPT code 99204 to bill for an initial patient examination typically required that the Insured present with problems of moderate to high severity.

96.     Pursuant to the CPT Assistant, during the relevant time period, the use of CPT code 99203 to bill for an initial patient examination typically required that the Insured present with problems of moderate severity.

97.     However, to the extent that the Insureds in the claims identified in Exhibits "1" - "2" had any presenting problems at all as the result of their typically-minor automobile accidents, the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

98. Even so, in the claims for initial examinations identified Exhibits "1" - "2", Next Medical, St. Germain, AssociatesMD, and Gadh routinely falsely represented that the Insureds presented with problems of moderate severity or moderate to high severity.

99. For example:

(i) On January 5, 2019, an Insured named AH was involved in an automobile accident. The contemporaneous police report indicated that AH's vehicle was drivable following the accident. The police report further indicated that AH was not injured and did not complain of any pain at the scene. Nonetheless, later that same day, AH presented to Dr. P. Phillips Hospital Emergency room where she was briefly observed on an outpatient basis and released shortly thereafter with no serious injury diagnosis. To the extent that AH experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AH on January 11, 2019, Next Medical and St. Germain billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ii) On June 19, 2019, an Insured named MR was involved in an automobile accident. The contemporaneous police report indicated that MR was not injured and did not complain of any pain at the scene. Nonetheless, later that same day MR presented to Homestead Hospital Emergency room where she was observed on an outpatient basis and diagnosed with cervicalgia. To the extent that MR experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of MR on July 9, 2019, AssociatesMD and Gadh billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(iii) On September 12, 2019, an Insured named CD was involved in an automobile accident. The contemporaneous police report indicated that CD was not injured and did not complain of any pain at the scene. In keeping with the fact that CD was not seriously injured, CD did not visit any hospital emergency room following the accident. To the extent that CD experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of CD on September 18, 2019, AssociatesMD and Gadh billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(iv) On December 10, 2019, an Insured named RH was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to RH's vehicle, and that RH's vehicle was drivable following the accident.

Following the accident, RH was transported to Weston Hospital where RH was discharged that same day with a low back diagnosis. To the extent that RH experienced any health problems at all as the result of the accident, they were of low severity. Even so, following a purported initial examination of RH on January 9, 2020, AssociatesMD and Gadh billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(v)     On November 18, 2020, an Insured named AL was involved in an automobile accident. The contemporaneous police report indicated that AL's vehicle was drivable following the accident. The police report further indicated that AL was not injured and did not complain of any pain at the scene. Nonetheless, three days later AL presented to Advent Health Emergency room where she was diagnosed with a headache.  To the extent that AL experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of AL on November 23, 2020, Next Medical and St. Germain billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

100.    These are only representative examples. During the relevant time period, in the claims for initial examinations identified in Exhibits "1" - "2", Next Medical, St. Germain, AssociatesMD, and Gadh virtually always falsely represented that the Insureds presented with problems of moderate severity or moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99203 and 99204, because examinations billable under CPT codes 99203 and 99204 are reimbursable at higher rates than examinations involving presenting problems of low severity, minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**b.     Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

101.    What is more, in the claims for initial examinations that are identified in Exhibits "1" - "2", Next Medical, St. Germain, AssociatesMD, and Gadh routinely misrepresented and

exaggerated the amount of face-to-face time that the examining physician spent with the Insureds or the Insureds' families.

102.    Pursuant to the CPT Assistant, the use of CPT code 99203 CPT to bill for an initial examination represented that the health care practitioner who performed the examination spent at least 30 minutes of face-to-face time with the patient or the patient's family, and the use of CPT code 99204 to bill for an initial examination represented that the health care practitioner who performed the examination spent at least 45 minutes of face-to-face time with the patient or the patient's family.

103.    As set forth in Exhibit "1", Next Medical and St. Germain virtually always billed for their putative initial examinations using CPT code 99203, and thereby represented that the health care practitioners who purported to conduct the examinations spent at least 30 minutes of face-to-face time with the Insureds or the Insureds' families during the putative examinations.

104.    As set forth in Exhibit "2", AssociatesMD and Gadh virtually always billed for their putative initial examinations using CPT codes 99203 or 99204 and thereby represented that the health care practitioners who purported to conduct the examinations spent between 30 to 45 minutes of face-to-face time with the Insureds or the Insureds' families during the putative examinations.

105.    In fact, in the claims for initial examinations identified in Exhibits "1" - "2", none of the healthcare practitioners associated with Next Medical or AssociatesMD ever spent more than 15 minutes – let alone 30 or 45 minutes – of face-to-face time with the Insureds or their families when purporting to conduct the examinations.

106.    For instance, and in keeping with the fact that the initial examinations in the claims identified in Exhibits "1" - "2" did not entail more than 15 minutes of face-to-face time between

the treating providers and the Insureds or the Insureds' families, the treating healthcare practitioners who purported to perform the examinations at both Next Medical and AssociatesMD used a template in purporting to conduct the initial examinations.

107.    The template that the healthcare practitioners used in purporting to conduct the initial examinations set forth a limited range of examination parameters.

108.    The only face-to-face time between the healthcare practitioners and the Insureds that was reflected in the limited range of examination parameters consisted of brief patient interviews and limited examinations of the Insureds' musculoskeletal systems.

109.    These brief patient interviews and limited examinations did not require any of the healthcare practitioners associated with Next Medical or AssociatesMD to spend more than 15 minutes of face-to-face time with the Insureds or their families.

110.    In the claims for initial examinations that are identified in Exhibits "1" - "2", the Defendants falsely represented that the examinations involved between 30 to 45 minutes of face-to-face time with the Insureds or their families in order to create a false basis for their charges under CPT codes 99203 and 99204, because examinations billable under CPT codes 99203 and 99204 are reimbursable at a higher rate than examinations that require less time to perform.

**c.      Misrepresentations Regarding the Extent of Medical Decision-Making**

111.    Moreover, in the claims for initial examinations identified in Exhibits "1" - "2", when Next Medical, St. Germain, AssociatesMD, and Gadh billed GEICO for putative initial examinations, they made the following misrepresentations regarding the extent of medical decision-making that was required in connection with the examinations:

(i)      When billing GEICO for putative initial examinations using CPT code 99203 in the claims identified in Exhibits "1" and "2", Next Medical, St. Germain, AssociatesMD, and Gadh falsely represented that the health care providers who purported to conduct

the examinations engaged in some legitimate, low complexity medical decision-making in connection with the examinations.

(ii)     When billing GEICO for putative initial examinations using CPT code 99204 in the claims identified in Exhibit "2", AssociatesMD and Gadh falsely represented that the physicians or health care providers who purported to conduct the examinations engaged in some legitimate, moderate complexity medical decision-making in connection with the examinations.

112.     In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

113.     For example, in the claims for initial examinations identified in Exhibits "1" - "2": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) Next Medical, St. Germain, AssociatesMD, and Gadh falsely, and their associates did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and instead provided a substantially similar, pre-determined sprain/strain or similar soft tissue injury "diagnoses" for every Insured, regardless of their true individual circumstances or presentation.

114.     For example:

(i)     On January 5, 2019, an Insured named AH was involved in an automobile accident. The contemporaneous police report indicated that AH's vehicle was drivable following the accident. The police report further indicated that AH was not injured and did not complain of any pain at the scene. Nonetheless, later that same day, AH presented to Dr. P. Phillips Hospital Emergency room where she was briefly observed on an outpatient basis and released shortly thereafter with no serious injury diagnosis.  To the extent that AH experienced any health problems at all as a result of the accident, they were of low or minimal severity. On January 11, 2019, Learn purported to conduct an initial examination of AH at Next Medical. Learn did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Learn did not consider any significant number of diagnoses or

management options in connection with the examination. Instead, Learn diagnosed AH with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that Next Medical provided to virtually every other Insured. Furthermore, neither AH's presenting problems, nor the treatment plan provided to AH by Next Medical, Learn, and St. Germain presented any risk of significant complications, morbidity, or mortality. To the contrary, AH did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Next Medical, Learn, and St. Germain consisted of medically unnecessary hand grip strength testing which did not pose the least bit of risk to AH. Even so, Next Medical, Learn, and St. Germain billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Learn engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ii)     On November 18, 2020, an Insured named AL was involved in an automobile accident. The contemporaneous police report indicated that AL's vehicle was drivable following the accident. The police report further indicated that AL was not injured and did not complain of any pain at the scene. Nonetheless, three days later AL presented to Advent Health Emergency room where she was diagnosed with a headache.  To the extent that AL experienced any health problems at all as a result of the accident, they were of low or minimal severity. On November 24, 2020, Paglione purported to conduct an initial examination of AL at AssociatesMD. Paglione did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Paglione did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Paglione diagnosed AL with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that AssociatesMD provided to virtually every other Insured. Furthermore, neither AL's presenting problems, nor the treatment plan provided to AL by AssociatesMD, Paglione, and Gadh presented any risk of significant complications, morbidity, or mortality. To the contrary, AL did not need any significant treatment at all as a result of the accident, and the treatment plan provided by AssociatesMD, Paglione, and Gadh consisted of medically unnecessary hand grip strength testing which did not pose the least bit of risk to AL. Even so, AssociatesMD and Gadh billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Paglione engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(iii)    On December 11, 2020, an Insured named GH was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to GH's vehicle and that GH's vehicle was drivable following the accident. The police report further indicate that while GH complained of some back pain, GH declined medical attention. In keeping with the fact that GH was not seriously injured in the accident, GH did not visit any hospital emergency room following the accident. To the extent that GH experienced any health problems at all as a

result of the accident, they were of low or minimal severity. On January 14, 2021, Turner purported to conduct an initial examination of GH at AssociatesMD. Turner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Turner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Turner diagnosed GH with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that AssociatesMD provided to virtually every other Insured. Furthermore, neither GH's presenting problems, nor the treatment plan provided to GH by AssociatesMD, Turner, and Gadh presented any risk of significant complications, morbidity, or mortality. To the contrary, GH did not need any significant treatment at all as a result of the accident, and the treatment plan provided by AssociatesMD, Turner, and Gadh consisted of medically unnecessary hand grip strength testing which did not pose the least bit of risk to GH. Even so, AssociatesMD and Gadh billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Turner engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(iv)    On July 23, 2021, an Insured named MP was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to MP's vehicle and that MP's vehicle was drivable following the accident. The police report further indicate that MP was not injured and did not complain of any pain at the scene. In keeping with the fact that MP was not seriously injured in the accident, MP did not visit any hospital emergency room following the accident. To the extent that MP experienced any health problems at all as a result of the accident, they were of low or minimal severity. On September 3, 2021, Campos purported to conduct an initial examination of MP at AssociatesMD. Campos did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Campos did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Campos diagnosed MP with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that AssociatesMD provided to virtually every other Insured. Furthermore, neither MP's presenting problems, nor the treatment plan provided to MP by AssociatesMD, Campos, and Gadh presented any risk of significant complications, morbidity, or mortality. To the contrary, MP did not need any significant treatment at all as a result of the accident, and the treatment plan provided by AssociatesMD, Campos, and Gadh consisted of medically unnecessary hand grip strength testing which did not pose the least bit of risk to MP. Even so, AssociatesMD and Gadh billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Campos engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(v)     On November 15, 2021, an Insured named BS was involved in an automobile accident.  The contemporaneous police report indicated that BS's vehicle was drivable following the accident.  The police report further indicated that BS was

not injured and did not complain of any pain at the scene.  In keeping with the fact that BS was not seriously injured, BS did not visit any hospital emergency room following the accident.  To the extent that BS experienced any health problems at all as a result of the accident, they were of low or minimal severity. On March 18, 2022, Del Grosso purported to conduct an initial examination of BS at Next Medical. Del Grosso did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Del Grosso did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Del Grosso diagnosed BS with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that Next Medical provided to virtually every other Insured. Furthermore, neither BS's presenting problems, nor the treatment plan provided to BS by Next Medical, Del Grosso, and St. Germain presented any risk of significant complications, morbidity, or mortality. To the contrary, BS did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Next Medical and St. Germain consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to BS. Even so, Next Medical and St. Germain billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Del Grosso engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vi)     On November 24, 2021, an Insured named SB was involved in an automobile accident. The contemporaneous police report indicated that SB's vehicle was drivable following the accident. The police report further indicate that while SB complained of some head and neck pain, SB declined medical attention. In keeping with the fact that SB was not seriously injured in the accident, SB did not visit any hospital emergency room following the accident. To the extent that SB experienced any health problems at all as a result of the accident, they were of low or minimal severity. On December 13, 2021, Pomerleau purported to conduct an initial examination of SB at AssociatesMD. Pomerleau did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Pomerleau did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Pomerleau diagnosed SB with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that AssociatesMD provided to virtually every other Insured. Furthermore, neither SB's presenting problems, nor the treatment plan provided to SB by AssociatesMD, Pomerleau, and Gadh presented any risk of significant complications, morbidity, or mortality. To the contrary, SB did not need any significant treatment at all as a result of the accident, and the treatment plan provided by AssociatesMD, Pomerleau, and Gadh consisted of medically unnecessary hand grip strength testing which did not pose the least bit of risk to SB. Even so, AssociatesMD and Gadh billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Pomerleau engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(vii)     On August 29, 2022, an Insured named LJ was involved in an automobile accident. The contemporaneous police report indicated that LJ's vehicle was drivable following the accident. The police report further indicate that LJ was not injured and did not complain of any pain at the scene. In keeping with the fact that LJ was not seriously injured in the accident, LJ did not visit any hospital emergency room following the accident. To the extent that LJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. On August 31, 2022, Snyder purported to conduct an initial examination of LJ at Next Medical. Snyder did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Snyder did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Snyder diagnosed LJ with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that Next Medical provided to virtually every other Insured. Furthermore, neither LJ's presenting problems, nor the treatment plan provided to LJ by Next Medical, Snyder, and St. Germain presented any risk of significant complications, morbidity, or mortality. To the contrary, LJ did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Next Medical and St. Germain consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to LJ. Even so, Next Medical and St. Germain billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Snyder engaged in some legitimate, low complexity medical decision-making during the purported examination.

(viii)    On September 6, 2022, an Insured named JB was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to JB's vehicle, and that JB's vehicle was drivable following the accident. The police report further indicate that JB was not injured and did not complain of any pain at the scene. In keeping with the fact that JB was not seriously injured in the accident, JB did not visit any hospital emergency room following the accident. To the extent that JB experienced any health problems at all as a result of the accident, they were of low or minimal severity. On October 10, 2022, Edet purported to conduct an initial examination of JB at Next Medical. Edet did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Edet did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Edet diagnosed JB with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that Next Medical provided to virtually every other Insured. Furthermore, neither JB's presenting problems, nor the treatment plan provided to JB by Next Medical, Edet, and St. Germain presented any risk of significant complications, morbidity, or mortality. To the contrary, JB did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Next Medical and St. Germain consisted of medically unnecessary chiropractic and physical therapy services,

which did not pose the least bit of risk to JB. Even so, Next Medical and St. Germain billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Edet engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ix)   On December 21, 2022, an Insured named BP was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to BP's vehicle, and that BP's vehicle was drivable following the accident. The police report further indicated that BP was not injured and did not complain of any pain at the scene. Nonetheless, the next day BP presented to Palm Bay Hospital Emergency room where she was briefly observed on an outpatient basis and released shortly thereafter with no serious injury diagnosis.  To the extent that BP experienced any health problems at all as a result of the accident, they were of low or minimal severity. On January 23, 2023, Tucci purported to conduct an initial examination of BP at AssociatesMD. Tucci did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Tucci did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Tucci diagnosed BP with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that AssociatesMD provided to virtually every other Insured. Furthermore, neither BP's presenting problems, nor the treatment plan provided to BP by AssociatesMD, Tucci, and Gadh presented any risk of significant complications, morbidity, or mortality. To the contrary, BP did not need any significant treatment at all as a result of the accident, and the treatment plan provided by AssociatesMD, Tucci, and Gadh consisted of medically unnecessary hand grip strength testing which did not pose the least bit of risk to BP. Even so, AssociatesMD and Gadh billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Tucci engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(x)   On November 10, 2023, an Insured named AC was involved in an automobile accident. The contemporaneous police report indicated that AC's vehicle was drivable following the accident. The police report further indicated that AC was not injured and did not complain of any pain at the scene. Nonetheless, the next day AC presented to Adventhealth Hospital Emergency room where she was briefly observed on an outpatient basis and released shortly thereafter with no serious injury diagnosis.  To the extent that AC experienced any health problems at all as a result of the accident, they were of low or minimal severity. On January 4, 2024, Lavezzard purported to conduct an initial examination of AC at Next Medical. Lavezzard did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Lavezzard did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Lavezzard diagnosed AC with the same, false, list of objectively unverifiable soft tissue injury "diagnoses" that Next Medical provided to virtually every other Insured. Furthermore, neither AC's presenting problems, nor the treatment plan provided to

AC by Next Medical, Lavezzard, and St. Germain presented any risk of significant complications, morbidity, or mortality. To the contrary, AC did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Next Medical, Lavezzard, and St. Germain consisted of medically unnecessary hand grip strength testing which did not pose the least bit of risk to AC. Even so, Next Medical, Lavezzard, and St. Germain billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Lavezzard engaged in some legitimate, low complexity medical decision-making during the purported examination.

115. In keeping with the fact that these putative "diagnoses" were pre-determined and false, Next Medical, St. Germain, AssociatesMD, and Gadh frequently issued substantially identical, false "diagnoses", on or about the same date, to two or more Insureds who had been involved in the same underlying accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that they were differently situated.

116. For example:

(i)   On May 29, 2019, two Insureds – AL and JL – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, June 10, 2019.  AL and JL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AL and JL suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided AL and JL with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(ii)  On October 7, 2019, two Insureds – DH and LH – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, October 9, 2019. DH and LH were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that DH and LH suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided DH and LH with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(iii)   On October 10, 2019, four Insureds – KB, JH, JH, and JH – were involved in the same automobile accident. Thereafter – incredibly – all four Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, October 14, 2019. KB, JH, JH, and JH were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that KB, JH, JH, and JH suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided KB, JH, JH, and JH with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all four of them.

(iv)   On February 11, 2020, two Insureds – MM and ER – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, March 4, 2020. MM and ER were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MM and ER suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided MM and ER with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(v)   On May 22, 2020, three Insureds – BL, JL, and QL – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, May 28, 2020. BL, JL, and QL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that BL, JL, and QL suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided BL, JL, and QL with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all three of them.

(vi)   On August 11, 2020, two Insureds – LM and LO – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, August 19, 2020. LM and LO were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that LM and LO suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided LM and LO with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(vii)   On August 19, 2020, two Insureds – JL and CS – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, August 20, 2020.  JL and CS were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JL and CS suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided JL and CS with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(viii)   On November 19, 2020, five Insureds – JD, KD, LD, AJ, and SJ – were involved in the same automobile accident. Thereafter – incredibly – all five Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, October 14, 2019. JD, KD, LD, AJ, and SJ were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JD, KD, LD, AJ, and SJ suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided JD, KD, LD, AJ, and SJ with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all five of them.

(ix)   On January 1, 2021, three Insureds – LC, PC, and SC – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, January 27, 2021. LC, PC, and SC were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that LC, PC, and SC suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided LC, PC, and SC with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all of them.

(x)   On August 8, 2021, two Insureds – AP and CR – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, August 23, 2021. AP and CR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AP and CR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided AP and CR with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xi)   On December 4, 2021, two Insureds – BA and BL – were involved in the same

automobile accident. Thereafter – incredibly – both Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, December 23, 2021. BA and BL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that BA and BL suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided BA and BL with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xii)   On April 15, 2022, two Insureds – DS and KS – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, May 11, 2022. DS and KS were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that DS and KS suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided DS and KS with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xiii)  On November 12, 2022, two Insureds – MG and NG – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, December 28, 2022. MG and NG were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MG and NG suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided MG and NG with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xiv)  On June 2, 2023, three Insureds – SA, SH, and LM – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, June 16, 2023. SA, SH, and LM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that SA, SH, and LM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided SA, SH, and LM with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all of them.

(xv)   On June 15, 2023, two Insureds – BC and AC – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, July 13, 2023.

BC and AC were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that BC and AC suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided BC and AC with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xvi)   On July 29, 2023, three Insureds – JG, CR, and JR – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, July 31, 2023. JG, CR, and JR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JG, CR, and JR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided JG, CR, and JR with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all of them.

(xvii)   On August 14, 2023, two Insureds – EP and MP – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, August 21, 2023. EP and MP were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EP and MP suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided EP and MP with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xviii)   On September 26, 2023, two Insureds – RM and YA – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at AssociatesMD for initial examinations by on the <u>exact same date</u>, October 6, 2023. RM and YA were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that RM and YA suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, AssociatesMD and Gadh provided RM and YA with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xix)   On February 8, 2024, two Insureds – CC and AR – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, February 10, 2024. CC and AR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the

45

vehicle. To the extent that CC and AR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided CC and AR with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(xx)    On February 8, 2024, two Insureds – RR and RR – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Next Medical for initial examinations by on the <u>exact same date</u>, February 10, 2024. RR and RR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that RR and RR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Next Medical and St. Germain provided RR and RR with substantially identical, false soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

117.    The false "diagnoses" contained within the initial examination reports were included to give the false impression that the initial examinations entailed some legitimate medical decision-making, to create a false basis for the charges under CPT codes 99203 and 99204, and to create a false justification for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

118.    In the claims for initial examinations identified in Exhibits "1" – "2", Next Medical, St. Germain, AssociatesMD, Gadh, the Treating Chiropractors, and the Treating Providers routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the putative examinations were illusory, with outcomes that were pre-determined to result in substantially identical, phony "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)    the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

(iii)     Next Medical and Associates MD never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they were operated in violation of the Clinic Act, Patient Brokering Act, and Anti-Kickback Statute.

119.     In this context, St. Germain, who at all relevant times purported to own Next Medical did not, and could not have, legitimately supervised the business activities of Next Medical

120.     Likewise, Gadh, who at all relevant times purported to own AssociatesMD did not, and could not have, legitimately supervised the business activities of AssociatesMD.

121.      Had St. Germain and Gadh actually supervised the business activities of Next Medical and AssociatesMD, they would have noted – among other things – that Next Medical and AssociatesMD's billing routinely fraudulently misrepresented that the putative initial examinations were legitimately and lawfully performed.

122.     St. Germain and Gadh both failed to do so, because they never actually supervised the business activities of Advanced Chiro.

**2.     The Fraudulent and Unlawful Charges for Follow-Up Examinations at Next Medical**

123.     In addition to their fraudulent initial examinations, Next Medical and St. Germain purported to subject the substantial majority of the Insureds in the claims identified in Exhibit "1" to multiple, fraudulent follow-up examinations during the course of their fraudulent treatment protocol.

124.     The follow-up examinations purportedly were performed by St. Germain and the Treating Chiropractors who were employed by or associated with the Next Medical and St. Germain and worked at their direction.

125.    As set forth in Exhibit "1", Next Medical and St. Germain then billed the vast majority of the follow-up examinations to GEICO under CPT code 99213, typically resulting in a charge between $150.00 and $205.00 for each putative follow-up examination.

126.    Pursuant to the CPT Assistant, during the relevant time period, the use of CPT code 99213 to bill for a follow-up examination represented – among other things –  that: (i) the patient presented with problems of low to moderate severity; and (ii) the treating health care practitioner performed at least two of the following three components during the examination: (a) took an "expanded problem focused" patient history; (b) conducted an "expanded problem focused physical examination"; and (c) engaged in medical decision-making of "low complexity".

127.    In the claims for follow-up examinations identified in Exhibit "1", the charges for the follow-up examinations were fraudulent in that they misrepresented Next Medical's eligibility to collect PIP Benefits in the first instance.

128.    In fact, and as set forth herein, Next Medical never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the Clinic Act, the False and Fraudulent Insurance Claims statute, as well as the Patient Brokering Act and Anti-Kickback Statute.

129.    As set forth below, the charges for the follow-up examinations identified in Exhibit "1" also were fraudulent in that they misrepresented the nature, extent, and results of the follow-up examinations.

a.      **Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

130.    To the extent that the Insureds in the claims identified in Exhibit "1" suffered any injuries at all in their automobile accidents, the injuries almost always were minor soft tissue injuries such as sprains and strains, which were of low or minimal severity, even at their onset.

131.     Minor soft tissue injuries such as strains and sprains virtually always resolve after a short course of conservative treatment or no treatment at all. By the time the Insureds in the claims identified in Exhibit "1" presented for their putative follow-up examinations – typically weeks or months after their minor accidents – the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents, or else their presenting problems were minimal.

132.     Even so, in the claims for the follow-up examinations under CPT code 99213 identified in Exhibit "1", Next Medical and St. Germain falsely represented that the Insureds presented with problems of low to moderate severity, when in fact the Insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

133.     For example:

(i)      On January 5, 2019, an Insured named AH was involved in an automobile accident. The contemporaneous police report indicated that AH's vehicle was drivable following the accident. The police report further indicated that AH was not injured during the accident. In keeping with the fact that AH was not seriously injured, AH did not visit any hospital emergency room following the accident. To the extent that AH experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a follow-up examination of AH on February 22, 2019 Next Medical and St. Germain billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that AH presented with problems of low to moderate severity.

(ii)     On June 18, 2019, an Insured named TW was involved in an automobile accident. The contemporaneous police report indicated that TW's vehicle was drivable following the accident. The police report further indicated that TW was not injured during the accident. In keeping with the fact that TW was not seriously injured, TW did not visit any hospital emergency room following the accident. To the extent that TW experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a follow-up examination of TW on October 10, 2019 Next Medical and St. Germain billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that TW presented with problems of low to moderate severity.

      (iii)    On September 12, 2019, an Insured named CD was involved in an automobile accident. The contemporaneous police report indicated that CD was not injured during the accident. In keeping with the fact that CD was not seriously injured, CD did not visit any hospital emergency room following the accident. To the extent that CD experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a follow-up examination of CD by Next Medical on September 30, 2019 Next Medical and St. Germain billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that CD presented with problems of low to moderate severity.

134.    These are only representative examples. In virtually all of the claims for follow-up examinations under CPT code 99213 identified in Exhibit "1", Next Medical and St. Germain falsely represented that the Insureds presented with problems of low to moderate severity, when in fact the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents at the time of the follow-up examinations, or else their presenting problems were minimal.

135.    In the claims for follow-up examinations identified in Exhibit "1", Next Medical and St. Germain routinely falsely represented that the Insureds presented with problems of low to moderate severity in order to: (i) create a false basis for their charges for the examinations under CPT code 99213, because examinations billable under CPT code 99213 are reimbursable at higher rates than examinations involving presenting problems of minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**b.**    **Misrepresentations Regarding the Amount of Time Spent on Follow-Up Examinations**

136.    Moreover, in the claims for follow-up examinations identified in Exhibit "1" that were billed under CPT code 99213, Next Medical and St. Germain misrepresented the amount of time that was spent on the follow-up examinations.

137.    The use of CPT code 99213 to bill for a follow-up examination typically represents that the treating provider who performed the examination spent at least 20 minutes of face-to-face time with the patient or the patient's family.

138.    As set forth in Exhibit "1", Next Medical and St. Germain submitted virtually all of their billing for follow-up examinations under CPT code 99213, and thereby falsely represented that the chiropractors who purported to perform the follow-up examinations spent at least 20 minutes of face-to-face time with the Insureds or the Insureds' families during the examinations.

139.    In fact, in the claims for follow-up examinations identified in Exhibit "1", the follow-up examinations did not entail 20 minutes of face-to-face time between the examining chiropractors and the Insureds or their families, to the extent that the examinations actually were performed in the first instance.

140.    For instance, and in keeping with the fact that the follow-up examinations allegedly provided through Next Medical and St. Germain did not entail more than 10 minutes of face-to-face time with the Insureds or their families, Next Medical and St. Germain used a template in purporting to conduct the follow-up examinations.

141.    The template that Next Medical and St. Germain used in purporting to conduct the follow-up examinations set forth a very limited range of examination parameters.

142.    The only face-to-face time between the examining chiropractors and the Insureds that was reflected in the limited range of examination parameters consisted of brief patient interviews and very brief examinations of the Insureds' musculoskeletal systems.

143.    These brief interviews and examinations did not require Next Medical and St. Germain, or any other chiropractor associated with Next Medical to spend 20 minutes of face-to-face time with the Insureds or their families.

51

144.     In the claims for follow-up examinations identified in Exhibit "1", Next Medical and St. Germain, and the Treating Chiropractors falsely represented that the examinations involved at least 20 minutes of face-to-face time with the Insureds or their families (when billed under CPT code 99213) in order to create a false basis for their charges under CPT code 99213, because examinations billable under CPT code 99213 are reimbursable at a higher rate than examinations that require less time to perform.

**c.    Misrepresentations Regarding the Nature, Extent, and Results of the Follow-Up Examinations**

145.     What is more, in the claims for follow-up examinations identified in Exhibit "1", neither St. Germain, nor any of the Treating Chiropractors associated with Next Medical, ever took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

146.     Rather, following the purported follow-up examinations, Next Medical, St. Germain, and the Treating Chiropractors simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and either (ii) recommended that the Insureds receive even more medically unnecessary Fraudulent Services, often including chiropractic and physical therapy services, despite the fact that the Insureds purportedly already had received extensive chiropractic and physical therapy services that supposedly had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

147.     The ersatz "follow-up examinations" that Next Medical, St. Germain, and the Treating Chiropractors acting at their direction purported to provide to the Insureds in the claims identified in Exhibit "1" therefore were medically useless, and played no legitimate role in the treatment or care of the Insureds, because the putative "results" of the examinations were

prearranged to comport with the medically unnecessary treatment plan that was pre-determined for each Insured from the moment they walked into Next Medical's offices.

**d.      The Fraudulent Charges for Illusory Follow-Up Examinations**

148.     Additionally, Next Medical and St. Germain routinely billed GEICO for multiple putative follow-up examinations under CPT code 99213 contemporaneous with their supposed provision of chiropractic manipulation and physical therapy services.

149.     However, these supposed "examinations" were never truly separate services from the putative physical therapy and chiropractic services that were provided to the Insureds on the same dates as the supposed examinations.

150.     Pursuant to the CPT Assistant, a separate examination may be billed independent of charges for chiropractic manipulation only if the patient's condition requires an examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services.

151.     However, virtually none of the Insureds in the claims identified in Exhibit "1" required additional examination services above and beyond the usual pre- and post- manipulation assessments that they received as a component of the chiropractic manipulation they received on the same dates of service as the purported examinations.

152.     Even so, Next Medical and St. Germain routinely billed GEICO for putative follow-up examinations under CPT code 99213, despite the fact that the examinations purportedly were provided contemporaneously with putative chiropractic manipulation and physical therapy services.

153.    In keeping with the fact that the follow-up examinations were illusory, Next Medical and St. Germain often did not submit any additional reports, notes, or substantiating documentation in connection with the follow-up examinations billed under CPT code.

154.    Even so, Next Medical and St. Germain routinely submitted charges under CPT code 99213 for illusory follow-up examinations.

155.    For example:

(i)     Next Medical and St. Germain billed GEICO for a purported follow-up examinations under CPT code 99213 that was supposedly provided to an Insured named CA contemporaneously with chiropractic manipulation and physical therapy services on April 23, 2019. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Next Medical and St. Germain provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

(ii)    Next Medical and St. Germain billed GEICO for a purported follow-up examinations under CPT code 99213 that was supposedly provided to an Insured named DA contemporaneously with chiropractic manipulation and physical therapy services on May 21, 2019. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Next Medical and St. Germain provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

(iii)   Next Medical and St. Germain billed GEICO for a purported follow-up examinations under CPT code 99213 that was supposedly provided to an Insured named LL contemporaneously with chiropractic manipulation and physical therapy services on November 16, 2020. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Next Medical and St. Germain provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

(iv)    Next Medical and St. Germain billed GEICO for a purported follow-up examinations under CPT code 99213 that was supposedly provided to an Insured

54

named DA contemporaneously with chiropractic manipulation and physical therapy services on December 10, 2021. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Next Medical and St. Germain provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

(v)      Next Medical and St. Germain billed GEICO for a purported follow-up examinations under CPT code 99213 that was supposedly provided to an Insured named RC contemporaneously with chiropractic manipulation and physical therapy services on January 18, 2024. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Next Medical and St. Germain provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

156.    These are only representative examples. Next Medical and St. Germain routinely submitted charges for illusory follow-up examinations, despite the fact that: (i) no legitimate follow-up examination services were provided; (ii) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic and physical therapy services; and (iii) a pre-manipulation patient assessment was part and parcel of the putative chiropractic manipulation and physical therapy services billed by Next Medical and St. Germain.

157.    Next Medical and St. Germain submitted charges for the duplicative and illusory follow-up examinations in order to maximize the amount of fraudulent billing they could submit to insurers, including GEICO.

158.    In the claims for follow-up examinations identified in Exhibit "1", Next Medical and St. Germain routinely fraudulently misrepresented that the examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the putative examinations were illusory, with outcomes that were pre-determined to result in substantially-identical, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)    the charges for the putative examinations misrepresented the nature and extent of the examinations; and

(iii)   Next Medical never was eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as it was operated in violation of the Clinic Act, Patient Brokering Act, Anti-Kickback Statute, and the False and Fraudulent Insurance Claims statute.

159.    In this context, St. Germain, who at all relevant times purported to own Next Medical, did not, and could not have, legitimately supervised the business activities of Next Medical.

160.    Had St. Germain actually supervised the business activities of Next Medical, he would have noted – among other things – that Next Medical routinely fraudulently misrepresented that the putative follow-up examinations were legitimately and lawfully performed.

161.    St. Germain failed to do so, because he never actually supervised the business activities of Next Medical.

**3.      The Fraudulent and Unlawful Charges for Physical Therapy and Chiropractic Treatment at Next Medical**

162.    In addition to the fraudulent initial examinations and follow-up examinations, Next Medical and St. Germain virtually always purported to subject each of the Insureds in the claims identified in Exhibit "1" to medically unnecessary physical therapy and chiropractic treatment and billed GEICO for the purported physical therapy and/or chiropractic services under CPT codes 97010, 97012, 97110, 97124, 97140, 98941, 98943, and G0283.

163.    Like Next Medical and St. Germain's charges for the other Fraudulent Services, the charges for the purported physical therapy and chiropractic services were fraudulent in that they misrepresented Next Medical' eligibility to collect PIP Benefits in the first instance.

164.    In fact, and as set forth herein, Next Medical never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, the False and Fraudulent Insurance Claims statute, as well as the Patient Brokering Act and Anti-Kickback Statute.

165.    The charges for the physical therapy and chiropractic services also were fraudulent in that they misrepresented the nature and medical necessity of the services.

166.    In a legitimate clinical setting, each individual patient's physical therapy and/or chiropractic treatment schedule, and the specific treatment modalities that will be used, must be tailored to the specific patient's circumstances, symptomatology, and presentation.

167.    In a legitimate clinical setting, the nature of, extent of, and schedule for physical therapy is constantly adjusted for each individual patient based on each patient's treatment progress, as assessed during each patient's follow-up examinations and on an ongoing basis as they receive the physical therapy or chiropractic treatment.

168.    In keeping with the fact that the purported physical therapy and chiropractic services that were billed through Next Medical to GEICO were not medically necessary, Next Medical and St. Germain did not tailor the chiropractic and physical therapy services they purported to provide to each Insured's individual circumstances and presentment.

169.    There are a large number of individual types of physical therapy and chiropractic services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

170.     However, Next Medical and St. Germain virtually always purported to provide the same handful of chiropractic and physical therapy "treatments" to virtually every Insured in the claims identified in Exhibit "1", on substantially the same schedule, without regard for the Insureds' individual circumstances.

171.     Specifically, Next Medical and St. Germain routinely purported to provide the Insureds in the claims identified in Exhibit "1" with one to two months of chiropractic and physical therapy services, virtually always consisting of chiropractic adjustments, hot/cold pack application, mechanical traction, therapeutic exercises, manual therapy, and electric stimulation. This, despite the fact that the Insureds were differently situated, and could not possibly all have required a substantially-similar course of physical therapy treatment.

172.     In keeping with the fact that Next Medical and St. Germain purported to provide these physical therapy and chiropractic services pursuant to pre-determined fraudulent protocols, Next Medical and St. Germain routinely purported to begin performing these services prior to the Insured having first tried a more conservative course of rest, ice, compression, and – if applicable – elevation of the affected body part.

173.     In legitimate clinical setting, when a patient presents with a soft tissue injury such as a sprain or strain arising from an automobile accident, the initial standard of care is conservative treatment comprised of rest, ice, compression, and – if applicable – elevation of the affected body part.

174.     It generally is inappropriate to begin administering physical therapy and chiropractic to a patient with a soft tissue injury in the immediate aftermath of the injury, before the patient has first tried a more conservative course of rest, compression, and – if applicable – elevation of the affected body part.

175.     Even so, in the claims identified in Exhibit "1", Next Medical and St. Germain routinely directed Insureds to immediately begin a course of physical therapy and chiropractic often within days of their accident, or even on the same day of their accident, before the Insureds had first tried a more conservative course of rest, compression, and – if applicable – elevation of the affected body part

176.     Next Medical and St. Germain routinely directed Insureds to immediately begin a course of physical therapy and chiropractic often within days of their accidents, or even on the same day of their accidents, because it was predetermined that they would provide their putative physical therapy and chiropractic services to any Insured who presented to them, regardless of medical necessity.

177.     What is more, and in further keeping with the fact that at Next Medical, the nature and extent of the physical therapy and chiropractic treatment that each Insured purportedly received was pre-determined, and had no legitimate connection to the Insureds' individual circumstances, two or more Insureds involved in the same automobile accident would not only begin their physical therapy and chiropractic treatment with Next Medical on the same dates, but incredibly, they would often also complete their purported treatment on the exact same dates.

178.     It is improbable – to the point of impossibility – that any two or more Insureds involved in any one of the automobile accidents in the claims identified in Exhibit "1" would suddenly have their symptoms resolve and be ready for discharge from treatment on the exact same date, months after their common motor vehicle accident.

179.     Even so, this occurred frequently at Next Medical, for example:

(i)      On May 29, 2019, two Insureds – AL and JL – were involved in the same automobile accident. Thereafter both AL and JL presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, June 10, 2019. AL and JL were different ages, in different physical conditions, located

in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AL and JL suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, AL and JL both presented at Next Medical on at least 10 of the <u>exact</u> same dates over a six week period where they received substantially similar physical therapy and chiropractic treatment on most of those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to AL and JL on the exact same day, July 15, 2019. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the six weeks when they purportedly were treating at Next Medical.

(ii)     On June 19, 2019, two Insureds – JS and SS – were involved in the same automobile accident. Thereafter both JS and SS presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, June 25, 2019. JS and SS were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JS and SS suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, JS and SS both presented at Next Medical on at least ten of the <u>exact</u> same dates over a three week period where they received substantially similar physical therapy and chiropractic treatment on those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to JS and SS on the exact same day, July 15, 2019. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the three weeks when they purportedly were treating at Next Medical.

(iii)     On October 10, 2019, three Insureds – JH, JH, and JH – were involved in the same automobile accident. Thereafter both JH, JH, and JH presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, June 10, 2019. JH, JH, and JH were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JH, JH, and JH suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, JH, JH, and JH all presented at Next Medical on all of the <u>exact</u> same dates over an eight week period where they received substantially similar physical therapy and chiropractic treatment on most of those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to JH, JH, and JH on the exact same day, December 9, 2019. This, despite the fact that any injuries they actually did

experience in their accident would have resolved differently over the eight weeks when they purportedly were treating at Next Medical.

(iv)     On October 9, 2019, two Insureds – PM and RM – were involved in the same automobile accident. Thereafter both PM and RM presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, October 12, 2019. PM and RM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that PM and RM suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, PM and RM both presented at Next Medical on at least twenty-five of the exact same twenty four dates over a nine week period where they received substantially similar physical therapy and chiropractic treatment on those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to PM and RM on the exact same day, December 13, 2019. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the nine weeks when they purportedly were treating at Next Medical.

(v)      On August 8, 2021, two Insureds – AP and CR – were involved in the same automobile accident. Thereafter both AP and CR presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, August 11, 2021. AP and CR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AP and CR suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, AP and CR both presented at Next Medical on at least twenty of the exact same dates over a seven week period where they received substantially similar physical therapy and chiropractic treatment on those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to AP and CR on the exact same day, September 23, 2021. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the seven weeks when they purportedly were treating at Next Medical.

(vi)     On October 13, 2021, two Insureds – IA and KA – were involved in the same automobile accident. Thereafter both IA and KA presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, October 14, 2021. IA and KA were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that IA and KA suffered any injuries at all in their accident, the injuries were different, and resolved at different rates.

Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, IA and KA both presented at Next Medical on all of the <u>exact</u> same twenty four dates over a six week period where they received substantially similar physical therapy and chiropractic treatment on those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to IA and KA on the exact same day, December 6, 2021. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the six weeks when they purportedly were treating at Next Medical.

(vii)     On April 12, 2022, two Insureds – MS and FS – were involved in the same automobile accident. Thereafter both MS and FS presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, April 20, 2022. MS and FS were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MS and FS suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, MS and FS both presented at Next Medical on at least twenty five of the <u>exact</u> same dates over an eight week period where they received substantially similar physical therapy and chiropractic treatment on those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to MS and FS on the exact same day, June 10, 2022. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the eight weeks when they purportedly were treating at Next Medical.

(viii)    On July 20, 2022, two Insureds – MJ and VJ – were involved in the same automobile accident. Thereafter both MJ and VJ presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, July 26, 2023. MJ and VJ were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MJ and VJ suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, MJ and VJ both presented at Next Medical on at least ten of the <u>exact</u> same dates over three week period where they received substantially similar physical therapy and chiropractic treatment on those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to MJ and VJ on the exact same day, August 11, 2023. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the three weeks when they purportedly were treating at Next Medical.

(ix)   On November 27, 2022, two Insureds – JJ and YA – were involved in the same automobile accident. Thereafter both JJ and YA presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, December 1, 2022. JJ and YA were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JJ and YA suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, JJ and YA both presented at Next Medical on all of the exact same twenty four dates over a nine week period where they received substantially similar physical therapy and chiropractic treatment on those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to JJ and YA on the exact same day, February 2, 2023. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the nine weeks when they purportedly were treating at Next Medical.

(x)   On March 10, 2023, two Insureds – RB and SB – were involved in the same automobile accident. Thereafter both RB and SB presented at Next Medical for their first day of physical therapy and chiropractic services on the exact same date, March 17, 2023. RB and SB were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that RB and SB suffered any injuries at all in their accident, the injuries were different, and resolved at different rates. Even so, and in keeping with the fact that the physical therapy and chiropractic treatment that Next Medical and St. Germain provided were pre-determined and false, RB and SB both presented at Next Medical on at least fifteen of the exact same dates over a six week period where they received substantially similar physical therapy and chiropractic treatment on those dates. Moreover, Next Medical and St. Germain stopped purporting to provide physical therapy and chiropractic services to RB and SB on the exact same day, April 22, 2023. This, despite the fact that any injuries they actually did experience in their accident would have resolved differently over the six weeks when they purportedly were treating at Next Medical.

180.   These are only representative examples. In the claims identified in Exhibit "1", Next Medical and St. Germain often purported to provide a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to two or more Insureds who appeared for these "treatments" on the exact same dates, and then in many instances would also incredibly "complete" their purported treatment on the exact same date.

181.    The Defendants' fraudulent scheme enabled Next Medical and St. Germain to bill for months of medically unnecessary chiropractic services per Insured and/or months of medically unnecessary physical therapy services per Insured, without regard for the Insureds' true circumstances or presentment.

**4.    The Fraudulently Unbundled Charges for Muscle Strength Testing, "Self Care Training", and "Education and Training" at AssociatesMD**

182.    After receiving a patient referral from Next Medical and St. Germain pursuant to the Defendants' unlawful referral scheme, and in a calculated effort to increase their fraudulent billing for patient examinations, AssociatesMD and Gadh frequently submitted separate charges for medically useless and illusory muscle strength tests under CPT codes 95832 and 97750, "self care training" under CPT code 97535, and "Education and Training" under CPT code 98960, together with their examination charges under CPT codes 99203 and 99204.

183.    Many of the muscle strength tests, "self care training", and "education and training" billed through AssociatesMD identified in Exhibit "2" – which were supposedly performed or directly supervised by the various Treating Providers associated with AssociatesMD – were performed at one of Next Medical's offices, often remotely.

184.    The charges for the purported muscle strength tests, self-care training, and education and training were fraudulent in that they misrepresented AssociatesMD's eligibility to collect PIP Benefits in the first instance.

185.    In fact, and as set forth herein, AssociatesMD never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, the False and Fraudulent Insurance Claims Statute, as well as the Patient Brokering Act and Anti-Kickback Statute.

186.    The charges for the muscle strength tests, self-care training, and education and training also were fraudulent in that they misrepresented the nature and medical necessity of the tests.

187.    Physical examinations performed on patients with soft-tissue trauma necessarily require muscle strength tests, inasmuch as these tests provide a starting point for injury assessment and treatment planning. Unless a physician knows the extent of a given patient's joint or muscle strength impairment, there is no way to properly diagnose or treat the patient's injuries. Evaluation of muscle strength is an essential component of the "hands-on" examination of a trauma patient.

188.    Since muscle strength tests typically must be conducted as an element of a soft-tissue trauma patient's initial examination, muscle strength tests are reimbursed as an element of the examinations.

189.    In other words, health care providers cannot conduct and bill for a patient examination, then bill separately for contemporaneously-provided muscle strength tests, as these muscle strength tests are part and parcel of the underlying initial examination. .

190.    To the extent that  AssociatesMD and Gadh actually provided patent examinations in the first instance, AssociatesMD, Gadh, and the Treating Providers associated with AssociatesMD and Gadh and acting at their direction, purported to conduct muscle strength tests on Insureds during the initial examinations they purported to provide.

191.    Despite the fact that their charges for the muscle strength tests were part and parcel of the charges that were submitted through AssociatesMD for purported initial examinations under CPT codes 99203 and 99204, AssociatesMD and Gadh routinely submitted separate charges for purported muscle strength testing under CPT codes 95832 and 97750, and thereby falsely

represented that they had performed some muscle strength testing that constituted a separate service from the initial examinations that they contemporaneously purported to provide.

192.　　For example:

(i)　　On April 16, 2019, AssociatesMD, Gadh, and Cimerberg purported to provide an initial examination to an Insured named DA. Thereafter, in addition to their charge for the examination under CPT code 99204,  AssociatesMD and Gadh billed GEICO a separate charge of $132.00 under CPT code 95832 for muscle strength testing, in order to artificially separate what was inherently one total procedure into subparts that were integral to the whole for the purpose of increasing medical fees.

(ii)　　On April 16, 2019, AssociatesMD, Gadh, and Cimerberg purported to provide an initial examination to an Insured named JA. Thereafter, in addition to their charge for the examination under CPT code 99204, AssociatesMD and Gadh billed GEICO a separate charge of $132.00 under CPT code 95832 for muscle strength testing, in order to artificially separate what was inherently one total procedure into subparts that were integral to the whole for the purpose of increasing medical fees.

(iii)　　On August 12, 2020, AssociatesMD, Gadh, and Spindler purported to provide an initial examination to an Insured named JV. Thereafter, in addition to their charge for the examination under CPT code 99204, AssociatesMD and Gadh billed GEICO a separate charge of $146.00 under CPT code 97750 for muscle strength testing, in order to artificially separate what was inherently one total procedure into subparts that were integral to the whole for the purpose of increasing medical fees.

(iv)　　On April 21, 2021, AssociatesMD, Gadh, and Turner purported to provide an initial examination to an Insured named SE. Thereafter, in addition to their charge for the examination under CPT code 99204, AssociatesMD and Gadh billed GEICO a separate charge of $146.00 under CPT code 97750 for muscle strength testing, in order to artificially separate what was inherently one total procedure into subparts that were integral to the whole for the purpose of increasing medical fees.

(v)　　On September 14, 2022, AssociatesMD, Gadh, and Pomerleau purported to provide an initial examination to an Insured named LJ. Thereafter, in addition to their charge for the examination under CPT code 99204, AssociatesMD and Gadh billed GEICO a separate charge of $146.00 under CPT code 97750 for muscle strength testing, in order to artificially separate what was inherently one total procedure into subparts that were integral to the whole for the purpose of increasing medical fees.

193.　　These are only representative examples. In the claims for purported initial examinations that are identified in Exhibit "2", AssociatesMD and Gadh, and the Treating

Providers routinely fraudulently and unlawfully unbundled separate charges for muscle strength testing under CPT codes 95832 and 97750, in order to increase their examination charges.

194.    AssociatesMD and Gadh's charges for purported self-care training under CPT code 97535 in the claims identified in Exhibit "2" also falsely represented that they had provided at least 15 minutes of separately-identifiable training to the Insureds regarding "self-care" beyond the initial examination service that was contemporaneously billed under CPT codes 99203 and 99204.

195.    Likewise, AssociatesMD and Gadh's charges under CPT code 98960 for purported "education and training" in the claims identified in Exhibit "2" falsely represented that a qualified nonphysician healthcare professional had provided at least 30 minutes of separately-identifiable education and training to the Insureds using a standardized curriculum – face-to-face with the patient or patient's caregiver – beyond the initial examination service that was contemporaneously billed under CPT codes 99203 and 99204.

**5.    The Fraudulent and Unlawful Charges for "Therapeutic Activities" at AssociatesMD**

196.    AssociatesMD and Gadh also routinely purported to subject the Insureds in the claims identified in Exhibit "2" to medically unnecessary therapeutic activities which they then billed to GEICO under CPT code 97530.

197.    Like AssociatesMD and Gadh's charges for the other Fraudulent Services, the charges for the purported therapeutic activities was fraudulent in that they misrepresented AssociatesMD's eligibility to collect PIP Benefits in the first instance.

198.    In fact, and as set forth herein, AssociatesMD never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set

forth in the Clinic Act, the False and Fraudulent Insurance Claims statute, as well as the Patient Brokering Act and Anti-Kickback Statute.

199.     In addition, the charges for therapeutic activity submitted through AssociatesMD were fraudulent in that AssociatesMD did not legitimately perform the therapeutic activities.

200.     When billing GEICO for the putative therapeutic activities using CPT code 97530 in the claims identified in Exhibit "2", AssociatesMD and Gadh falsely represented that the Treating Provider associated with AssociatesMD who purported to perform the therapeutic activity employed the use of dynamic activities to improve the functional performance of the patient.

201.     However, AssociatesMD, Gadh, and the Treating Providers working at their direction did not legitimately provide the therapeutic activity as they did not employ the use of dynamic activities to improve the functional performance of a patient.

202.     In keeping with the fact that the therapeutic activities were illusory, AssociatesMD and Gadh never submitted any reports, notes, or substantiating documentation in connection with the therapeutic activities billed under CPT code 97530.

## III.     **The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO**

203.     To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of bills and treatment reports through Next Medical and AssociatesMD to GEICO, containing thousands of individual charges, seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment.

204.     The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that Next Medical and AssociatesMD were in compliance with Florida law and therefore were eligible to

collect PIP Benefits in the first instance. In fact, Next Medical and AssociatesMD were never eligible for collect PIP Benefits in the first instance because: (a) Next Medical and AssociatesMD operated in violation of the Clinic Act; (b) Next Medical and AssociatesMD operated in violation of the Patient Brokering Act and the Anti-Kickback Statute; and (c) Next Medical and AssociatesMD engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

(ii)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement, because they were provided – to the extent that they were provided at all – in violation of the Clinic Act, Patient Brokering Act, Anti-Kickback Statute, False and Fraudulent Insurance Claims Statute, and because they were medically unnecessary.

(iii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)     The HCFA-1500 forms reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

## IV.    **The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance**

205.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO. Even so, the Defendants knowingly misrepresented and concealed facts related to Next Medical and AssociatesMD in an effort to prevent discovery that the Defendants variously operated in pervasive violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, the False and Fraudulent Insurance Claims statute, and to prevent discovery that the

Fraudulent Services were medically unnecessary and, in many cases, illusory, and that the services were routinely performed by massage therapists  or another unlicensed individual.

206.     GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $17,200,000.00.

207.     GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it commenced this action.

### FIRST CAUSE OF ACTION
**Against Next Medical**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

208.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-207, above.

209.     There is an actual case in controversy between GEICO and Next Medical regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

210.     Next Medical has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of the Clinic Act, Patient Brokering Act, the Anti-Kickback statute, the False and Fraudulent Insurance Claims Statute.

211.     Next Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

212.    Next Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

213.    Next Medical has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

214.    Next Medical has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

215.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Next Medical has no right to receive payment for any pending bills submitted to GEICO.

## SECOND CAUSE OF ACTION
### Against St. Germain
### (Violation of RICO, 18 U.S.C. § 1962(c))

216.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-207, above.

217.    Next Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

218.    St. Germain knowingly has conducted and/or participated, directly or indirectly, in the conduct of Next Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a

continuous basis for over five years seeking payments that Next Medical was not eligible to receive under the No-Fault Law because: (i) Next Medical unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance;  (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (vi) because Next Medical engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its' patients in violation of the False and Fraudulent Insurance Claims Statute.

219.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

220.    Next Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which St. Germain operated Next Medical, inasmuch as Next Medical was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Next Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that

the Defendants continue to attempt collection on the fraudulent billing submitted through Next Medical to the present day.

221.    Next Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Next Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

222.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $14,300,000.00 pursuant to the fraudulent bills submitted through Next Medical.

223.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees, and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Against St. Germain, AssociatesMD, and Gadh**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

224.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-207, above.

225.    Next Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

226.    St. Germain, AssociatesMD, and Gadh are employed by or associated with the Next Medical enterprise.

227.    St. Germain, AssociatesMD, and Gadh knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Next Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or

cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Next Medical was not eligible to receive under the No-Fault Law because: (i) Next Medical unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided– – to the extent that they were provided at a– – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (vi) because Next Medical engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its' patients in violation of the False and Fraudulent Insurance Claims Statute.

228.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

229.    St. Germain, AssociatesMD, and Gadh knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

230.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $14,300,000.00 pursuant to the fraudulent bills submitted through the Next Medical enterprise.

231.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against Next Medical and St. Germain**
**(Under Fla. Stat. 501.201 et. seq.)**

232.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-207, above.

233.   Next Medical and St. Germain are actively engaged in trade and commerce in the State of Florida.

234.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

235.   Next Medical and St. Germain engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

236.   The bills and supporting documents submitted by Next Medical and St. Germain to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Next Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; (iv) that the Fraudulent Services actually were performed in the first instance; and (v) because Next Medical engaged in the general business practice of waiving, or failing to make a good-faith effort

to collect, co-payments and deductibles from its' patients in violation of the False and Fraudulent Insurance Claims Statute.

237.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Next Medical and St. Germain has been materially injurious to GEICO and its Insureds.

238.    The conduct of Next Medical and St. Germain was the actual and proximate cause of the damages sustained by GEICO.

239.    Next Medical and St. Germain's unfair and deceptive acts have caused GEICO to sustain damages of at least $14,300,000.00.

240.    By reason of Next Medical and St. Germain's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**FIFTH CAUSE OF ACTION**
**Against Next Medical and St. Germain**
**(Common Law Fraud)**

241.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-207, above.

242.    Next Medical and St. Germain intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Next Medical for the Fraudulent Services.

243.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Next Medical was in compliance with the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute, and eligible to collect PIP Benefits in the first

instance, when in fact Next Medical never was in compliance with the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed; and (vi) because Next Medical engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its' patients in violation of the False and Fraudulent Insurance Claims Statute.

244.   Next Medical and St. Germain intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Next Medical that were not reimbursable.

245.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $14,300,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Next Medical and St. Germain through Next Medical.

246.   Next Medical and St. Germain's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

247.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### SIXTH CAUSE OF ACTION
**Against Next Medical and St. Germain**
**(Unjust Enrichment)**

248.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-207, above.

249.    As set forth above, Next Medical and St. Germain have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

250.    When GEICO paid the bills and charges submitted or caused to be submitted by Next Medical and St. Germain through Next Medical, it reasonably believed that it was legally obligated to make such payments based on Next Medical and St. Germain's improper, unlawful, and/or unjust acts.

251.    Next Medical and St. Germain have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Next Medical and St. Germain voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

252.    Next Medical and St. Germain's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

253.    By reason of the above, Next Medical and St. Germain have been unjustly enriched in an amount to be determined at trial, but in no event less than $14,300,000.00.

## SEVENTH CAUSE OF ACTION
### Against AssociatesMD
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

254.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-207, above.

255.     There is an actual case in controversy between GEICO and AssociatesMD regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

256.     AssociatesMD has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of the Clinic Act, Patient Brokering Act, the Anti-Kickback statute, and the False and Fraudulent Insurance Claims Statute.

257.     AssociatesMD has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

258.     AssociatesMD has no right to receive payment for any pending bills submitted to GEICO because Gadh engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its patients in violation of the False and Fraudulent Insurance Claims Statute.

259.     AssociatesMD has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

260.     AssociatesMD has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

261.     AssociatesMD has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

262.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that AssociatesMD has no right to receive payment for any pending bills submitted to GEICO.

### EIGHTH CAUSE OF ACTION
#### Against Gadh
#### (Violation of RICO, 18 U.S.C. § 1962(c))

263.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-207, above.

264.     AssociatesMD is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

265.     Gadh knowingly has conducted and/or participated, directly or indirectly, in the conduct of AssociatesMD's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that AssociatesMD was not eligible to receive under the No-Fault Law because: (i) AssociatesMD unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent

that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (vi) because Gadh engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its patients in violation of the False and Fraudulent Insurance Claims Statute.

266.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

267.    AssociatesMD's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Gadh operated AssociatesMD, inasmuch as AssociatesMD was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for AssociatesMD to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through AssociatesMD to the present day.

268.    AssociatesMD is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by AssociatesMD in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

269.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $2,900,000.00 pursuant to the fraudulent bills submitted through AssociatesMD.

270.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
### Against Gadh, Next Medical, and St. Germain
### (Violation of RICO, 18 U.S.C. § 1962(d))

271.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-207, above.

272.    AssociatesMD is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

273.    Gadh, Next Medical, and St. Germain are employed by or associated with the AssociatesMD enterprise.

274.    Gadh, Next Medical, and St. Germain knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of AssociatesMD's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that AssociatesMD was not eligible to receive under the No-Fault Law because: (i) AssociatesMD unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services

82

were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (vi) because Gadh engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its patients in violation of the False and Fraudulent Insurance Claims Statute.

275.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

276.    Gadh, Next Medical, and St. Germain knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

277.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $2,900,000.00 pursuant to the fraudulent bills submitted through the AssociatesMD enterprise.

278.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### TENTH CAUSE OF ACTION
### Against AssociatesMD and Gadh
### (Under Fla. Stat. 501.201 et. seq.)

279.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-207, above.

280.     AssociatesMD and Gadh are actively engaged in trade and commerce in the State of Florida.

281.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

282.     AssociatesMD and Gadh engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

283.     The bills and supporting documents submitted by AssociatesMD and Gadh to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) AssociatesMD's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; (iv) that the Fraudulent Services actually were performed in the first instance; and (v) because AssociatesMD engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its' patients in violation of the False and Fraudulent Insurance Claims Statute.

284.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of AssociatesMD and Gadh has been materially injurious to GEICO and its Insureds.

285.     The conduct of AssociatesMD and Gadh was the actual and proximate cause of the damages sustained by GEICO.

286.     AssociatesMD and Gadh's unfair and deceptive acts have caused GEICO to sustain damages of at least $2,900,000.00.

287.     By reason of AssociatesMD and Gadh's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**ELEVENTH CAUSE OF ACTION**
**Against AssociatesMD and Gadh**
**(Common Law Fraud)**

288.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-207, above.

289.     AssociatesMD and Gadh intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through AssociatesMD for the Fraudulent Services.

290.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that AssociatesMD was in compliance with the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute, and eligible to collect PIP Benefits in the first instance, when in fact AssociatesMD never was in compliance with the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, the False and Fraudulent Insurance Claims Statute; and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many

cases they were not actually performed; and (v) because AssociatesMD engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from its' patients in violation of the False and Fraudulent Insurance Claims Statute.

291.    AssociatesMD and Gadh intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through AssociatesMD that were not reimbursable.

292.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $2,900,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by AssociatesMD and Gadh through AssociatesMD.

293.    AssociatesMD and Gadh's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

294.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWELFTH CAUSE OF ACTION**
**Against AssociatesMD and Gadh**
**(Unjust Enrichment)**

295.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-207, above.

296.    As set forth above, AssociatesMD and Gadh have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

297.     When GEICO paid the bills and charges submitted or caused to be submitted by AssociatesMD and Gadh through AssociatesMD, it reasonably believed that it was legally obligated to make such payments based on AssociatesMD and Gadh's improper, unlawful, and/or unjust acts.

298.     AssociatesMD and Gadh have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that AssociatesMD and Gadh voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

299.     AssociatesMD and Gadh's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

300.     By reason of the above, AssociatesMD and Gadh have been unjustly enriched in an amount to be determined at trial, but in no event less than $2,900,000.00.

## JURY DEMAND

301.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.     On the First Cause of Action against Next Medical, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Next Medical has no right to receive payment for any pending bills submitted to GEICO;

B.     On the Second Cause of Action against St. Germain, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $14,300,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.      On the Third Cause of Action against St. Germain, AssociatesMD, and Gadh, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $14,300,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.      On the Fourth Cause of Action against Next Medical and St. Germain, compensatory damages in an amount to be determined at trial but in excess of $14,300,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

E.      On the Fifth Cause of Action against Next Medical and St. Germain, compensatory damages in an amount to be determined at trial but in excess of $14,300,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.      On the Sixth Cause of Action against Next Medical and St. Germain, more than $14,300,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

G.      On the Seventh Cause of Action against AssociatesMD, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that AssociatesMD has no right to receive payment for any pending bills submitted to GEICO;

H.      On the Eighth Cause of Action against Gadh, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $2,900,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.      On the Ninth Cause of Action against Gadh, Next Medical, and St. Germain, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of

88

$2,900,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

J.      On the Tenth Cause of Action against AssociatesMD and Gadh, compensatory damages in an amount to be determined at trial but in excess of $2,900,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

K.      On the Eleventh Cause of Action against AssociatesMD and Gadh, compensatory damages in an amount to be determined at trial but in excess of $2,900,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

L.      On the Twelfth Cause of Action against AssociatesMD and Gadh, more than $2,900,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated: August 13, 2024

*/s/   Max Gershenoff*
Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Kristen Wenger (FBN 92136)
Lindsey R. Trowell (FBN 678783)
Yonatan M. Bernstein (FBN 1035899)
RIVKIN RADLER, LLP
Riverplace Tower
1301 Riverplace Blvd.
Suite 1000
Jacksonville, FL 32207
Phone:  (904) 791-8948
Facsimile:  (904) 598-6225
Max.Gershenoff@rivkin.com
John.Marino@rivkin.com
Kristen.Wenger@rivkin.com
Lindsey.Trowell@rivkin.com
Yonatan.Bernstein@rivkin.com
*Counsel for Plaintiffs*